# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **RANDALL J. SALTERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:10-1234** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered October 20, 2010 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has filed briefs in the matter.

The Plaintiff, Randall J. Salters, (hereinafter referred to as "Claimant"), filed an application for DIB on August 28, 2007, (protective filing date), alleging disability as of January 1, 2006, due to a "lower back injury (2 herniated discs) on [September 10, 2003], left leg problems, and depression."[1] (Tr. at 11, 111-13, 129, 141.) The claims were denied initially and upon reconsideration. (Tr. at 72-74, 79-81.) On July 14, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 82-83.) The hearing was held on November 13, 2009, before the Honorable Melvin G. Olmscheid. (Tr. at 31-66.) By decision dated December 4, 2009,

---

[1] Claimant alleged in his Disability Report - Appeal that his "back pain had gotten worse. Leg is causing more pain and has bec[o]me very stiff." (Tr. at 159.)

the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-24.) The ALJ's decision became the final decision of the Commissioner on August 27, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on October 20, 2010, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of

      the Listings of Impairments.
          (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 1, 2006. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from depression, anxiety, and degenerative disc disease, which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14-16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform sedentary level work as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the additional limitation of a sit/stand option that allows the claimant to sit or stand alternately; at will, provided the claimant remains on task while in either position during the work period; only occasionally requires foot control operations with the left leg, climbing, balancing, stooping, kneeling, crouching, crawling; and requires no concentrated exposure to extreme cold and moderate vibration. Due to limitations imposed by his mental impairments, he would be limited to simple, routine, and repetitive tasks with few, if any, work place changes; and only occasional interaction with the public.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past

relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an assembler, a packer, and an inspector/tester/sorter, at the sedentary level of exertion. (Tr. at 22-23, Finding No. 10.) On this basis, benefits were denied. (Tr. at 23, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 19, 1972, and was 37 years old at the time of the administrative hearing, November 13, 2009. (Tr. at 22, 37, 111.) Claimant has a high school education and is able to communicate in English. (Tr. at 38, 140, 147.) In the past, he worked as an underground coal miner. (Tr. at 22, 39, 59, 141-43, 183.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence of record. Claimant essentially challenges only the ALJ's findings related to his mental condition, and therefore, the undersigned briefly will address that evidence.

**Treatment Notes - Dr. Muscari**:

On October 4, 2004, Dr. Muscari from Family Healthcare Associates, diagnosed depression and gave Claimant samples of Wellbutrin. (Tr. at 435.) Dr. Muscari continued his diagnosis of depression through December 28, 2004. (Tr. at 432-35.) On April 25, 2005, however, Dr. Muscari referred Claimant to Dr. Bizri for his diagnoses of chronic lumbar strain, depression, and anxiety. (Tr. at 430.)

**Treatment Notes - Southern Highlands Community Mental Health Center**:

Claimant treated at Southern Highlands from April 7, 2005, through February 13, 2008. (Tr. at 230-74, 449-50.) At the initial intake on April 7, 2005, Claimant presented with complaints of poor sleep, panic attacks, and bad thoughts. (Tr. at 272-73.) His counselor, Pam Bailey, noted that Claimant's mood was one of embarrassment and self shame, that he felt suicidal, that his memory was good, and that he had severe depression. (Tr. at 274.)

Claimant's initial psychiatric evaluation was conducted on April 18, 2005, by Pamela Y. Ramsey, PA-C. (Tr. at 267-71.) He presented with a history of depression, decreased sleep, and irritability. (Tr. at 268.) He reported decreased sleep with only two or three hours per night, normal appetite, low self-esteem, poor concentration, anxiety, and thoughts of shooting himself. (Id.) Mental status exam revealed appropriate psychomotor activity, speech, thought content, memory, and attention. (Tr. at 270.) Claimant was oriented and aware, interacted well, denied suicidal or homicidal ideation, presented with fair insight and judgment, and was of average intelligence. (Id.)

Ms. Ramsey diagnosed depressive disorder and assessed a GAF of 55.[3] (Tr. at 270-71.) She prescribed Seroquel 25mg, Wellbutrin XL 300mg, and Vistaril 50mg. (Tr. at 271.) Claimant's symptoms were managed on a monthly basis, and then later in two month intervals. Ms. Ramsey continued her diagnosis and GAF assessment of 55, through October 4, 2005. (Tr. at 255-66.) She noted on June 20, 2005, that Claimant was doing "some better" and was "sleeping some better." (Tr. at 263.) On December 5, 2005, she assessed a GAF of 58. (Tr. at 254.) On April 3, 2006, it was noted that Claimant's mood was stable and his affect was appropriate. (Tr. at 250.) He was assessed a GAF of 55, which was continued through January 16, 2009. (Tr. at 234-54.) Claimant was "doing good" on June 5, 2006, and rated his depression at a four to five out of ten. (Tr. at 246.) Claimant was discharged from Southern Highlands on February 13, 2008, for failing to keep his appointments. (Tr. at 450.)

**Mental Status Examination - Sunny S. Bell, M.A.**:

Claimant underwent a mental status examination by Sunny S. Bell, M.A., a licensed psychologist, on November 11, 2007. (Tr. at 299-304.) Claimant complained of right side weakness, pain in his groin, left leg, and back, and depression. (Tr. at 299.) He reported that he was unable to work due to pain. (Tr. at 300.) Regarding his depression, Claimant reported that he had difficulty sleeping, with mid-evening awakenings due to pain. (Id.) He further complained of irritability, decreased libido, difficulty concentrating and making decisions, memory problems, feelings of wanting to cry, of being withdrawn and apathetic, and feelings of hopelessness, helplessness, worthlessness, and uselessness. (Id.) He described his mood as "pretty good" lately. (Id.) Claimant

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994)

also reported pain attacks characterized by his heart racing, trembling and shaking, and difficulty breathing. (Id.) The panic attacks occurred primarily when he found himself in a crowd. (Id.) His appetite was good. (Id.)

Ms. Bell noted that Claimant had been undergoing psychiatric treatment at Southern Highlands Community Mental Health Center since April 2005, and visited with his psychiatrist every three to six months and his counselor on a monthly basis. (Tr. at 300.) Claimant reported that he graduated from high school, having taken regular classes and earning average grades. (Tr. at 301.) He never was retained but was suspended twice for truancy. (Id.) While in high school, Claimant participated in extracurricular activities. (Id.) He received no vocational training and never attended college. (Id.)

On mental status exam, Ms. Bell observed that Claimant was cooperative and motivated, interacted in a socially appropriate manner, exhibited a sense of humor, maintained good eye contact, and appeared comfortable. (Tr. at 301.) Claimant's speech was clear, goal-directed, and relevant. (Id.) He was oriented to the month, year, and day of week, but not to the date. (Id.) His mood was depressed and his affect was blunted. (Id.) Ms. Bell noted that Claimant's thought processes were logical and organized, he reported no delusions or obsessions, his judgment was within normal limits, his immediate and remote memory skills were within normal limits, his recent memory was severely deficient, his concentration was normal, and he exhibited no gross psychomotor difficulties. (Tr. at 302.)

Ms. Bell diagnosed depressive disorder NOS and panic disorder with agoraphobia. (Tr. at 302.) She noted his daily activities to have included caring for his hygiene independently, driving short distances, putting gas in his vehicle, running errands, sitting outside, watching television, and

managing his finances. (Tr. at 302-03.) Ms. Bell opined that Claimant's social functioning was within normal limits, as was his pace and persistence. (Tr. at 303.) Nevertheless, Ms. Bell opined that Claimant's prognosis was poor, though he was capable of managing his benefits, if awarded. (Id.)

**Psychiatric Review Technique and Mental RFC Assessment - John Todd, Ph.D.**:

On November 21, 2007, Dr. Todd completed a form Psychiatric Review Technique ("PRT"), on which he opined that Claimant's depressive and panic disorders resulted in mild limitations in maintaining activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, and pace; and no episodes of decompensation. (Tr. at 305-18.) In reaching his opinions, Dr. Todd reviewed the examinations by Dr. Greenburg, who performed a neurological consult on August 28, 2007; Ms. Walker; and Ms. Bell, as well as at least some treatment notes from Southern Highlands. (Tr. at 317.)

Dr. Todd opined that Claimant was moderately limited in his ability to understand, remember, and carry out detailed instructions. (Tr. at 319-20.) He assessed that Claimant was not significantly limited in all other categories. (Id.) Dr. Todd noted that Claimant's limitations did not exceed the moderate level and that he had the capacity to perform "routine repetitive activities in an environment that can accommodate his physical limitations. Otherwise [he is] able to learn and perform worklike activities." (Tr. at 321.)

**PRT and Mental RFC Assessment - James Binder, M.D.**:

Dr. Binder likewise opined that Claimant's depressive and panic disorders resulted in mild limitations in maintaining activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, and pace; and no episodes of decompensation. (Tr. at 323-

33.) Dr. Binder reviewed the notes from Dr. Greenberg, Southern Highlands, and Ms. Bell. (Tr. at 335.) He opined that Claimant was limited moderately in his ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 337-38.) He concluded that with these moderate limitations, Claimant was "capable of learning and performing basic work-like tasks." (Tr. at 339.)

**Treatment Notes - Mari Sullivan Walker, Inc.**:

Claimant treated with Ms. Walker from August 30, 2007, through November 9, 2009. (Tr. at 362-68, 466-82.) Claimant initially presented to Ms. Walker on August 30, 2007, with complaints of sadness, low energy, sleep disturbance, poor anger control, excessive worry, nervous mannerisms, shaky and jittery feelings, and sensitivity to crowds. (Tr. at 361.) She diagnosed major depressive disorder recurrent and generalized anxiety disorder, and assessed a GAF of 60. (Id.) Ms. Walker recommended monthly, individual treatment. (Id.) From August 30, 2007, through August 1, 2008, Claimant saw Ms. Walker on a monthly basis and reported depression and anxiety levels ranging from six to eight out of ten. (Tr. at 350-60.) Ms. Walker's prognosis was poor throughout this time period. (Id.) On October 18, 2007, Claimant reported that things were "pretty good." (Tr. at 359.) In November, 2007, he was looking forward to Thanksgiving and that he kept himself busy cleaning. (Tr. at 358.) On December 17, 2007, Claimant reported that he had a good Thanksgiving and was looking forward to Christmas, though was somewhat depressed due to his financial circumstances. (Tr. at 357.) He reported that he spent his time sitting in his camper and that he killed a "spike." (Tr. at 357.) On April 14, 2008, Ms. Walker noted that Claimant's concentration was poor, his affect was

restricted, and his mood was depressed. (Tr. at 353.) Ms. Walker encouraged Claimant to stay busy to keep his depression level down. (Tr. at 352.) On June 24, 2008, Claimant reported that he did not "feel like life is much" and that it was hard to help in family situations. (Tr. at 351.) Claimant reported on August 1, 2008, that he had thought about life a lot and that his depression was worse. (Tr. at 350, 480.)

On September 12, 2008, Claimant reported a depression level of seven and an anxiety level of six. (Tr. at 479.) He complained of sleep disturbance, feelings of sadness, body tension, low energy, poor concentration, and feelings of hopelessness, nervousness, and apprehensiveness. (Tr. at 479.) Claimant indicated that he felt like doing little except watching television. (Id.) On October 15, 2008, Claimant reported that he was very tired and was not resting at all due to severe pain levels. (Tr. at 478.) His wife reported that his physical pain had worsened as had his views on life. (Id.) Claimant thought that his life sometimes was not worth living. (Id.)

Ms. Walker conducted psychological testing on November 20, 2008, which revealed that Claimant's intellectual functioning was within the low average classification. (Tr. at 507.) He achieved a verbal IQ score of 88, a performance IQ of 92, and a full scale IQ of 89. (Id.) Scores on the WRAT-Fourth Edition, indicated that Claimant read and comprehended sentences at an eleventh grade level, spelled at a seventh grade level, and performed math at a fourth grade level. (Tr. at 508.) Finally, the Beck Depression Inventory revealed a severe range of depression and the Beck Anxiety Inventory revealed a moderate to severe range of anxiety. (Tr. at 509-10.) Ms. Walker diagnosed depression and anxiety due to pain and assessed a GAF of 42.[4] (Tr. at 510.)

---

[4] A GAF of 41-50 indicates that the person has "[s]erious symptoms . . . or any serious impairment in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994)

From December 17, 2008, through March 5, 2009, Claimant reported his depression at a level four and anxiety at a level six. (Tr. at 475-77.) On January 14, 2009, Claimant indicated that he desired to find a purpose in life but that he thought he did not deserve to enjoy himself. (Tr. at 476.) He reported on March 5, 2009, that he was placing an undue burden on his wife. (Tr. at 475.)

Claimant reported depression and anxiety levels of five and seven respectively, on April 2, 2009, and reported that he was afraid that others judged him for not working which caused him to withdraw to protect himself. (Tr. at 474.) On May 4, 2009, Claimant indicated that he felt useless and that he had no role for himself without an income. (Tr. at 473.) He punished himself by not allowing himself to enjoy anything based on his belief that he did not deserve it. (Id.) On June 1, 2009, Claimant reported depression and anxiety levels of five and four respectively. (Tr. at 472.) He reported anxiety over his daughter leaving. (Id.) He indicated on July 23, 2009, that he felt like he had a purpose when his daughter was home. (Tr. at 471.) On August 18, 2009, Claimant was in "poor shape" due to pain, but he did not take his pain medications out of fear of addiction. (Tr. at 470.) He reported poor concentration and comprehension when reading on September 16, 2009. (Tr. at 469.) On October 28, 2009, Claimant reported that he was sleeping a little better but continued to awake due to pain. (Tr. at 468.) Ms. Walker noted that Claimant had custody of his daughter and was doing better. (Id.) She also noted that the weather contributed to his pain, which in turn caused anxiety from the pain. (Id.)

By an undated letter to Claimant's counsel, Ms. Walker opined that despite medication for pain and psychiatric symptoms and monthly counseling sessions, Claimant's "ability to work has not improved" since August 30, 2007. (Tr. at 467.) She explained that Claimant exhibited a low frustration tolerance and irritability with individuals he associates with on a regular basis." (Id.) Ms.

Walker noted that his relationships were strained due to his self-consciousness about his inability to function and lack of income. (Id.) Ms. Walker consequently opined that Claimant "would not be [able] to engage in regular gainful employment, even of the light or sedentary type" but would be able to manage his benefits. (Id.)

On November 10, 2009, Ms. Walker completed a mental RFC assessment on which she opined that Claimant's ability to perform the following tasks was poor: follow work rules, relate to co-workers, interact with supervisors, maintain personal appearance, behave in an emotionally stable manner, and understand, remember, and carry out simple and detailed job instructions. (Tr. at 451-52, 481-82.) She further opined that he had no ability to deal with the public, use judgment, deal with work stresses, function independently, maintain attention and concentration, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out complex job instructions. (Id.) Ms. Walker nevertheless concluded that Claimant was capable of managing any benefits he may have been awarded. (Tr. at 452, 482.)

**Psychological Evaluation - Alicia Smith, M.A. & Tony Goudy, Ph.D.**:

Claimant underwent a psychological evaluation on August 7, 2008, at the request of his attorney. (Tr. at 362-68.) Ms. Smith reviewed the medical records from Ms. Walker, with whom he had sought mental health treatment for the past three years. (Tr. at 363-64.) Prior to Ms. Walker, Claimant received treatment at Southern Highlands for two years. (Tr. at 364.) Claimant reported that he was diagnosed with depression and anxiety three years ago but that his symptoms had persisted for five years. (Tr. at 363-64.) He then was prescribed Wellbutrin 300 mg, but Claimant "conveyed discouragement as to the effectiveness." (Tr. at 364.) Regarding the depression, Claimant presented with anhedonia and reported significantly poor sleep and an increased appetite, resulting

in a 45 pound weight gain over a five year period. (Tr. at 363.) He reported chronic feelings of guilt and worthlessness, difficulty concentrating, and frequent crying spells. (Id.) Claimant also admitted to having engaged in suicidal ideation, but denied intent or plan. (Id.) Regarding the anxiety, Claimant reported motor tension in the form of chronic tension headaches that were worse with stress, autonomic hyperactivity, and apprehensive expectation. (Id.)

On mental status exam, Ms. Smith observed that Claimant's personal care and hygiene were good, that he was dressed casually, that his psychomotor activity was somewhat slowed and sluggish, that rapport was established easily and maintained, that he made little eye contact, and that he was polite, friendly, and cooperative, though somewhat reserved. (Tr. at 365-66.) Claimant described his mood as "pretty good" and his affect was restricted somewhat. (Tr. at 366.) He had no speech or perceptual problems, his immediate and remote memories were intact but his recent memory was moderately to markedly impaired, his concentration was moderately to markedly impaired, his judgment and insight were intact, his intellectual functioning was in the average range, and he was oriented fully. (Id.) Ms. Smith diagnosed depressive disorder NOS and generalized anxiety disorder, and assessed a GAF of 55. (Tr. at 367.) She opined that testing revealed severe levels of depression and anxiety and that Claimant "would appear to nearly equal [a listing] in combination." (Tr. at 367-68.)

**Office Notes - Dr. M. Khalid Hasan, M.D., F.A.P.A.**:

In a letter to the WV DHHR, dated September 6, 2008, Dr. Hasan noted Claimant's complaints of mood swings, anxiety, depression, sleep difficulties, and bad nerves. (Tr. at 462.) On mental status exam, Dr. Hasan noted that Claimant was cooperative, maintained clear but non-spontaneous speech, presented with a dysphoric affect, had intact cognition, had appropriate abstract

15

thinking and thought content, was of average intelligence, had normal memory skills, and had fair insight and judgment. (Tr. at 463.) He diagnosed major depression, recurrent, moderate to moderately severe in nature; generalized anxiety disorder; and adjustment disorder with anxious and depressed mood secondary to physical illness and situational factors. (Id.) Dr. Hasan recommended outpatient psychiatric treatment and to be cautious of sleep apnea. (Id.) He also suggested that Claimant attend church and exercise. (Id.)

Claimant's Challenges to the Commissioner's Decision

Neither the Commissioner nor the Claimant filed briefs in this matter, and Claimant's Complaint fails to set forth any specific claims. However, Claimant stated in his Request for Review of Hearing Decision/Order that

> [t]he ALJ failed to properly consider the psychiatric limitations as contained in the reports of Mar[i] Sullivan Walker, M.A., Alicia Smith, M.A., and Tony Goudy, Ph.D., all of which documented marked impairment prior to the date last insured. The VE at the hearing opined that there would be no work for an individual with those limitations.

(Tr. at 6.) The undersigned notes that Claimant was represented by counsel at all levels of review, including this appeal. As Claimant has not raised any other specific arguments at this level of review, the undersigned additionally has reviewed the entire record to see if it comports with the substantial evidence standard.

Analysis.

The ALJ found that Claimant's depression and anxiety were severe impairments. (Tr. at 13.) In assessing Claimant's mental residual functional capacity, the ALJ limited Claimant to "simple, routine, and repetitive tasks with few, if any, work places changes; and only occasional interaction with the public." (Tr. at 16.) In reaching this decision, the ALJ reviewed all the mental health evidence of record and explained his assignment of weight to the various opinions. (Tr. at 21-22.)

The ALJ gave great weight to the opinions of Drs. Todd and Binder, the state agency reviewing psychologists who concluded that despite some moderate limitations, "significant functional capacity remains." (Tr. at 21.) The ALJ determined that these opinions were supported by the overall evidence of record. (Id.) The ALJ summarized the opinion of Ms. Smith and Mr. Goudy, but concluded that their opinion was neither controlling nor persuasive. (Tr. at 21.) Though they opined that Claimant's impairments nearly met a listing in combination, the ALJ noted that they imposed inconsistent moderate limitations and possibly, a moderate to marked limitation in concentration, persistence, or pace. (Id.) The ALJ also noted that opinions as to whether a listing is met is reserved to the Commissioner. (Id.) Finally, the ALJ noted that Ms. Smith's and Mr. Goudy's evaluation was performed pursuant to Claimant's attorney's referral "to bolster the claimant's pending disability case." (Id.) Consequently, the ALJ did not assign much weight to their opinions. (Id.)

Regarding Ms. Walker's opinion that Claimant was unable to engage in any gainful employment, the ALJ concluded that it was not entitled significant weight. (Tr. at 21-22.) First, the ALJ noted that her opinion was on an issue reserved to the Commissioner. (Tr. at 21.) Next, the ALJ noted that Ms. Walker's mental RFC assessment was inconsistent with her treatment notes, wherein Claimant remained relatively stable. (Tr. at 21-22.) Finally, the ALJ noted that her opinions were inconsistent with her GAF assessments, which were never rated below 55. (Tr. at 22.) Consequently, the ALJ gave little weight to Ms. Walker's opinions. (Id.)

Contrary to Claimant's allegations as set forth in his Request for Review of Hearing Decision/Order, the undersigned finds that the ALJ explained his reasons for not according the opinions of Ms. Smith, Mr. Goudy, and Ms. Walker significant weight. The undersigned further finds that the ALJ's decision is consistent with the overall evidence of record, including Ms. Walker's treatment notes and GAF assessments, which indicated that Claimant remained stable

17

throughout treatment and suffered no more than moderate limitations in functioning. Ms. Walker assessed a GAF of 42 on one occasion, but her subsequent treatment notes failed to report any significantly severe limitations. As the ALJ determined, there was an inconsistency between Ms. Walker's treatment notes and her opinions. Accordingly, the undersigned finds that the ALJ's decision as to Claimant's mental residual functional capacity assessment is supported by substantial evidence.

In addition to the claims alleged in Claimant's Request for Review of Hearing Decision/Order, the undersigned finds that a review of the entire record reveals that the decision of the Commissioner is supported by substantial evidence. The ALJ thoroughly reviewed all of the medical evidence of record and considered the testimony of Claimant. (Tr. at 13-15, 16-22.) The ALJ also complied with the applicable Regulations and case law in determining that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment, that Claimant was not entirely credible regarding the severity of his pain and other symptoms, and that Claimant was limited to sedentary work with certain limitations, and could perform a significant number of jobs in the national economy despite his severe impairments.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then

fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: January 31, 2012.

R. Clarke VanDervort
United States Magistrate Judge